UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BRIAN McLEOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-cv-01061-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRAITON, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

The plaintiff, Brian McLeod, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. McLeod timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 19). For the Reasons that follow, the Commissioner's decision is due to be affirmed.

**I.     FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Mr. McLeod was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision; he has an eleventh grade education, as well as some

vocational training in automotive repair. (R. 29, 373, 411, 412). His past work experience includes employment as a machinist, automotive mechanic, and heavy equipment mechanic. (R. 45). Mr. McLeod claims he became disabled on September 8, 2006, due to back pain, carpal tunnel syndrome, and depression. (R. 407).

Mr. McLeod applied for DIB and SSI benefits on April 30, 2007. (R. 373-80, 402). After holding two hearings, the ALJ initially denied Mr. McLeod's claim on March 18, 2010. (R. 181-97). The Appeals Council vacated the initial denial and remanded the case to the ALJ. (*See* R. 79). The ALJ held three additional hearings before finding Mr. McLeod was not disabled and denying his claim for a second time. (R. 11-29). The Appeals Council denied review of the ALJ's decision, and Mr. McLeod timely appealed in this court. (*See* R. 1-3).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's

physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can

perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Mr. McLeod had not engaged in SGA since the alleged onset of his disability.  (R. 13).  At step two, the ALJ found Mr. McLeod suffered from the following severe impairments: chronic neck and low back pain with mild degenerative changes; hypertension; obesity; and generalized pain syndrome.  (R. 14).

At step three, the ALJ found Mr. McLeod did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments.  (R. 18).  Before proceeding to step four, the ALJ determined Mr. McLeod had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations: (1) he could continuously lift and/or carry objects weighing up to 10 pounds; (2) he could occasionally lift and/or carry objects weighing up to 20 pounds; (3) he could sit for five hours during an eight-hour work-day, but for no more than thirty (30) minutes to an hour at a time;  (4) he could stand for three hours out of an eight-hour work day, but for no more than one hour at a time; (5) he could walk for two hours during an eight-hour work day, but for no more than thirty (30) minutes at a time; (6) he must be able to use a cane as needed for ambulation and balance; (7) he could occasionally climb, balance, stoop, kneel, and crouch; (8) he could never climb ladders or crawl; and (9) he

would be limited to occasional exposure to humidity, extreme cold, and continuous vibration. (R. 19). In determining the RFC, the ALJ considered Mr. McLeod's request to be referred for an MRI of his lumbar spine. The ALJ concluded an MRI was not warranted based on: (1) recent x-rays that did not support the severe symptoms reported by Mr. McLeod; (2) a doctor's reports concerning x-rays that did not support Mr. McLeod's allegations; and (3) a finding that the record was fully developed through multiple hearings and consultative examinations. (R. 27).

At step four, the ALJ determined Mr. McLeod was unable to perform any of his past relevant work. (R. 28). The ALJ noted Mr. McLeod was a "younger individual" with "limited education," as those terms are defined by the regulations. (R. 28). Because Mr. McLeod's RFC did not allow for the full range of sedentary work, the ALJ took testimony from a vocational expert ("VE"). The ALJ found Mr. McLeod could perform jobs such as cashier II and order clerk cashier. (R. 28-29). The ALJ concluded his decision by finding Mr. McLeod was not disabled. (R. 29).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v.*

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

This appeal contends the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ failed to properly develop the record regarding Mr. McLeod's back impairment; and (2) the ALJ's reliance on the testimony of the VE was improper because the VE mistakenly equated the limitation of using a cane with the requirement for a sit/stand option.  (Doc. 13 at 12-14).  Each contention is addressed in turn.

### A. Failure to Develop the Record

Administrative hearings under the SSA are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389, 402-03 (1971).  The ALJ has the duty to develop the facts fully and fairly and to conscientiously probe for relevant information.  *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981); *Coates v. Colvin*, No. 14-1866, 2016 WL 48161 at *6 (N.D. Ala. *entered* Jan. 5, 2016).  The ALJ need not engage in further development where the record contains sufficient evidence to support an informed decision.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  Additionally, under the substantial evidence standard, an ALJ is not required to order additional examinations to establish

absolute certainty regarding a claimant's condition.  *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).  The ALJ also does not bear the burden of proving the claimant disabled; rather, that burden falls on the claimant, and the claimant is "responsible for producing evidence to support his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

      Mr. McLeod contends the ALJ failed to develop the record here, stating the only imaging of his lumbar spine was a June 2007 x-ray.  (Doc. 13 at 12).  Mr. McLeod contends the ALJ should have ordered additional x-rays, MRIs, or CAT scans in order to fully develop the record.  As an initial matter, Mr. McLeod's contention is incorrect; the record includes—and the ALJ relied upon—x-rays of Mr. McLeod's lumbar spine taken on July 13, 2013.  (R. 639-40; *see* R. 26-27).  The ALJ discussed the findings from the 2013 x-ray and concluded that it did not support the severe symptoms Mr. McLeod reported.  (R. 26-27).  Accordingly, the district court cases cited by the Plaintiff are factually distinguishable because the record in those cases did not contain current or chronological imaging studies.  *See* Doc. 13 at 13 (citing *Jenkins v. Colvin*, No. 12-465, 2013 WL 3465190, at *4-5

(S.D. Ala. July 10, 2013); *Sims v. Astrue,* No. 09-366, 2010 WL 2952686, at *4 (M.D. Ala. July 26, 2010).

Next, to the extent Mr. McLeod contends the ALJ erred in refusing to order an MRI, this argument also fails. The Eleventh Circuit has held that updated imaging studies are not specifically required where the ALJ otherwise has developed the record through consultative examinations and other evidence. *See, e.g., Freeman v. Comm'r of Soc. Sec.,* 593 F. App'x 911, 916 n.5 (11th Cir. 2014) (holding ALJ not required to order MRI of claimant's feet and ankles; the ALJ fulfilled her obligation to develop a full and fair record by ordering a consultative examination and consulting VE). Here, the ALJ was able to make an informed decision based on the Plaintiff's description of his daily activities and the medical evidence in the record. The ALJ developed the record by collecting multiple physical examinations to fill in evidentiary gaps due to the dearth of medical treatment sought by Plaintiff. (R. 27, 640). The ALJ obtained available treatment notes (*e.g.* R. 504-12, 547-67, 601-08), held five hearings (R. 40-75, 77-93, 95-103, 126-70), ordered four physical consultative examinations (R. 514-19, 575-80, 589-99, 626-38), and elicited testimony from two medical experts (R. 51-62, 71-73) and a VE (R. 62-65). Accordingly, the ALJ correctly concluded that additional diagnostic testing was not warranted because: the 2013 x-rays did not support the extreme symptoms alleged by the Plaintiff; and additional medical sources

9

indicated that lumbar x-rays did not support the severity of symptoms alleged. (R. 27, 513-19, 581-87, 640).

For all of the foregoing reasons, the undersigned concludes the ALJ properly developed the record, which included ample evidence to reach a sound decision. Accordingly, Mr. McLeod's arguments regarding the ALJ's development of the record fail.

### B.     Vocational Expert Testimony

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). If the Commissioner demonstrates that the claimant can perform work which is available in significant numbers in the national economy, "the claimant must prove she is unable to perform those jobs in order to be found disabled." *Id*. at 1228. In performing this analysis, "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through vocational expert's testimony of the existence of jobs in the national economy that the claimant can perform." *Wolfe v. Chater,* 86 F.3d 1072, 1077-78 (11th Cir. 1996).

Mr. McLeod asserts that the ALJ improperly relied on the VE's testimony because the VE conflated the need to use a cane for balance with the requirement

of a sit/stand option. (Doc. 13 at 13-14). Mr. McLeod argues the sit/stand option assumes the claimant will be able to use both hands, while the need for a cane would necessarily limit him to the use of one hand. (Doc. 13 at 15). However, Mr. McLeod presents no vocational evidence in support of this argument. (*See generally* Doc. 13).

Here, the ALJ posed a hypothetical question to the VE that incorporated his RFC finding and identified all of Mr. McLeod's limitations, including the need for a cane. (R. 64). The VE responded to the question posed by the ALJ by stating:

> Well based on the hypothetical a person would have a sit/stand option at their leisure because the 30 minutes would eliminate the unskilled, sedentary and light jobs of sitting and walking, or standing for that matter, because it wouldn't meet the -- so the only job that would come to mind to me would be a cashier II at the light level with an SVP: 2, and that would be 211.462-010, and there would be as many as 3.000 of those with sit/stand option in Alabama, in excess of 175,000 nationally. And then there would be an order clerk cashier at the sedentary, unskilled level and that would be 209.567-014 and that's sedentary once more with an SVP: 2, and there would be as many as 3,000 of those jobs in Alabama and as many as 150,000 nationally.

(R. 65). Accordingly, while the ALJ did not explicitly state the Plaintiff would require a sit/stand option, the VE incorporated this restriction based on the ALJ"s imposition of temporal limitations regarding Mr. McLeod's ability to sit and stand. Moreover, the VE's testimony does not demonstrate any confusion regarding Mr. McLeod's need for a cane and the requirement of a sit/stand option; Mr. McLeod

has presented no evidence he would be unable to perform the jobs identified by the VE.  *See Jones*, 190 F.3d at 1229.

For the foregoing reasons, the VE's testimony constitutes substantial evidence in support of the ALJ's decision that Mr. McLeod was not disabled.  (*See* R.28-29).  Accordingly, Mr. McLeod's arguments regarding the VE's testimony fail.

## IV.   CONCLUSION

Upon review of the administrative record, and considering all of Mr. McLeod's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.  A separate order will be entered.

**DONE** this 13th day of September, 2016.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE